UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JAMES C. MARCELLO, and )
OLIVIA MARCELLO )
)
Plaintiffs, )
) CV-06-68-B-W
v. )
)
STATE OF MAINE, et al. )
)
Defendants. )

## ORDER ON DEFENDANT'S MOTION TO DISMISS

James and Olivia Marcello filed suit against the state of Maine and several other parties alleging a conspiracy to violate 42 U.S.C. § 1983.  This Order addresses the motion to dismiss filed by Farrell, Rosenblatt & Russell (FRR), a law firm.  *See Def. FRR's Mot. to Dismiss* (Docket # 11) (*Def.'s Mot.*).  Because there is no basis to conclude that FRR has been a state actor or to conclude that FRR engaged in a civil conspiracy against the Plaintiffs, this Court grants Defendant's motion to dismiss.[1]

## I.      The History of the Case

The long and drawn out history of this case, largely taking place in state court, dates back at least to 1997, when the town of Stetson (Town) initiated an enforcement proceeding against Mr. Marcello for failure to comply with the Town's building code.  *See Def.'s Mot.* at 1.  After hearing, on April 2, 1998, the Maine District Court in Newport (Clapp, J.) found that Mr.

---

[1] On August 7, 2006, the Plaintiffs moved to dismiss FRR's motion to dismiss.  *Objection to Mot. to Strike* (Docket # 18).  The motion asserts that FRR's motion should be dismissed because the motion was not signed by an attorney, the motion presents "an insufficient defense and scandalous matter and equates a d[e]liberate evasion to answer said plaintiff's complaint."  *Id.* at 1.  This Court has addressed the signature requirement.  *See Order on Mot. for Default J.* (Docket # 26).   As this Court concludes in this Order that the FRR motion must be granted, the Court rejects the remaining bases for Plaintiffs' motion to strike and denies said motion.

Marcello had violated the Stetson Building Code by converting a mobile home from a storage unit to a dwelling place without first installing a masonry wall or concrete slab. *See Def.'s Mot.* Ex. A. That decision was affirmed twice on appeal: first on January 25, 1999 by the Maine Superior Court (Kravchuk, C.J.), *id.*, and again on July 1, 1999 by the Maine Supreme Judicial Court. *Def.'s Mot.* Ex. B.

Asserting Mr. Marcello failed to comply with the judgment, the Town moved for contempt in state court on July 20, 2000. *See State Court Record* (Docket # 52).[2] The motion was supported by an Affidavit dated July 12, 2006 from Stetson Code Enforcement Officer Stewart Brooks, stating that Mr. Marcello remained out of compliance with the town ordinance and had not yet paid the amounts ordered by the Court. *Id.*, *Aff. of Stewart Brooks.* On August 18, 2000, Mr. Marcello was served by a Penobscot County Deputy Sheriff with a "Subpoena for Hearing on Motion for Contempt," instructing him to appear at the Maine District Court in Newport for a hearing at 3:00 p.m. on October 3, 2000. *Id.* On August 24, 2000, Mr. Marcello responded with a motion to quash subpoena and a motion for sanctions. *Def.'s Mot.* Ex. C. For reasons that are not a matter of record, the hearing on all matters was delayed. *Def.'s Mot.* Ex. C.

A year later, the Town reinitiated its efforts to obtain compliance with the April 2, 1998 Order. The Town experienced difficulty effecting service and enlisted the services of Chief Deputy Sheriff Glenn Ross. *See State Court Record, Affidavit of Chief Deputy Glenn Ross.* Deputy Ross filed an affidavit, which stated that on October 17, 2001, he contacted by telephone a person he believed to be James Marcello and informed him that he had legal papers to serve on him. *Id.* But, the individual only would say that he would pass a message along to Mr. Marcello.

---

[2] On October 13, 2006, this Court issued an order instructing FRR to file certain state court documents pertinent to the adjudication of this motion to dismiss. *See Order* (Docket # 47).

Deputy Ross made an appointment to serve Mr. Marcello at 8:00 a.m. on October 18, 2001. *Id.* When Deputy Ross arrived at the Marcellos' locked and barricaded gate at the appointed time, he observed that the gate was chain locked from the inside with blocking placed in front of the gate on the inside of the barricade. *Id.* A stockade type fence enclosed the front of the property, but wood smoke was coming from the chimney. *Id.* Deputy Ross concluded that Mr. Marcello was present, but was avoiding service. *Id.*

Based on Deputy Ross's affidavit, District Judge Vendean Vafiades granted the Town's motion for alternative service of the contempt subpoena, allowing service to be completed by posting a copy of the subpoena on the front gate of Mr. Marcello's residence and sending a copy of the subpoena to him by regular mail. *State Court Record, Order on Alternative Service.* In accordance with this Order, the Town served another subpoena on Mr. Marcello for a hearing to take place on November 6, 2001. *Def.'s Mot.* Ex. C. Mr. Marcello failed to appear and was defaulted. *Id.* Consequently, Judge MacMichael issued a bench warrant on December 6, 2001, set bail in the amount of $2,500 real estate or $250 cash, and rescheduled the contempt hearing for January 10, 2002. *See Def.'s Mot.* Ex. C, D. Because Mr. Marcello failed to appear a second time and the warrant had not been executed, the court rescheduled the hearing to a date uncertain, conditioned upon Mr. Marcello's arrest. *Def.'s Mot.* Ex. D.

It was not until October 4, 2005 that Mr. Marcello was arrested and brought to court for a hearing on the contempt charge. *Def.'s Mot.* Ex. E. At that time, the parties appeared before Judge MacMichael and advised him that they had come to an agreement that Mr. Marcello would pay the fines and install a foundation by November 8, 2005. *Id.* The Town filed a proposed order the following day to reflect this agreement, but Mr. Marcello responded by objecting to the proposed order. *Id.* Judge MacMichael disqualified himself from further consideration of the

case, but ordered Mr. Marcello to appear for hearing on November 16, 2005. *Id.* In the meantime, Mr. Marcello moved to dismiss the contempt proceeding citing several grounds, including lack of personal jurisdiction. *Id.* Ex. G. On November 23, 2005, Judge William Anderson summarily denied the motion, whereupon Mr. Marcello appealed to the Maine Superior Court. *Id.* Ex. H. On December 5, 2006, the Superior Court dismissed the appeal. *Id.* Ex. I.

On May 31, 2006, Plaintiffs initiated this civil action under 42 U.S.C. § 1983 against the state of Maine, the Hon. William Anderson, the Third District Court of Newport, code enforcement officer Travis Gould, and FRR. *See Compl.* (Docket # 1). On July 25, 2006, FRR moved to dismiss Plaintiffs' complaint, asserting several grounds. *See Def.'s Mot.*

## II.    Standard of Review

Rule 12(b)(6) provides, in part:

> Every defense, in law or fact, to a claim for relief in any pleading…shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:…(6) failure to state a claim upon which relief can be granted….

Fed. R. Civ. P. 12(b)(6). "In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998)). A defendant is entitled to dismissal only if it "'appears to a certainty that the plaintiff would be unable to recover under any set of facts.'" *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001) (quoting *Roma Constr. Co. v. A Russo*, 96 F.3d 566, 569 (1st Cir. 1996)); *see also Nethersole v. Bulger*, 287 F.3d 15, 18 (1st Cir. 2002).

Ordinarily, when a court reviews a motion to dismiss, it may not take into account documents outside the complaint. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). An exception exists, however, for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* Here, FRR attached to its motion a number of state court judgments, which are official public records and form the underlying basis for the Plaintiffs' complaint. [3] This Court finds that the attachments to Defendant's motion to dismiss are proper, and this Court considers those documents in ruling on the motion.

## III.   The Complaint

In the Complaint, Plaintiffs allege that, through the course of the court proceedings, FRR conspired with the state of Maine code enforcement officer and Judge Douglas Clapp, then of the Third District Court in Newport, to deprive the Plaintiffs of "life, liberty and property" without due process of law in violation of 42 U.S.C. § 1983. *Compl.* ¶ 3. More specifically, the Plaintiffs claim that FRR's involvement on behalf of the Town in the enforcement and contempt proceedings constituted a conspiracy to deprive Plaintiffs of their civil rights. *Compl.* ¶ 3. [4]

### a.   The Beginning of the Alleged Conspiracy

---

[3] The July 1, 1999 decision of the Maine Supreme Judicial Court is a matter of public record. The other documents attached to FFR's motion to dismiss are certified copies of Maine state court decisions and are self authenticating under Fed. R. Evid. 902(4). *Def.'s Mot.* Ex. A – I. The Plaintiffs have not objected to the authenticity of these documents.

[4] In particular, Plaintiffs allege that FRR illegally sought a subpoena and an arrest warrant, persuaded witnesses to testify falsely at the enforcement proceeding and contempt hearing, and conspired to violate their Fourth Amendment rights. *See Compl.* ¶¶ 4-11.

The Complaint begins with several out-of-time allegations.[5]  The Plaintiffs assert that as early as August 1, 1997, Stewart Brooks, the "state of Maine Code Enforcement Officer conspired with defendant attorney Thomas A. Russell to deprive the Marcellos of a renewal of building permit for house/cabin purchased in 1996 and concealed, kept, and deliberately failed to return the plaintiffs their personal check sent for payment of renewal." *Compl.* ¶ 19.  Plaintiffs allege that on September 16, 1997, FRR "while acting under the color of the Town of Stetson Building Code Ordinance <u>Section 3-E</u>, did willfully and in bad faith, conspire[] with Judge Douglas A. Clapp of the Third District Court of Newport, Maine, and reach[] an understanding to commit crimes against the 14th Amendment Constitutional rights of the plaintiffs, by depriving them of their 'Life, Liberty, & Property' without due process of law."  *Id.* ¶ 3 (underline in original).  The Complaint asserts that Attorney Thomas Russell, a member of the law firm of FRR, and Mr. Brooks "conspired and did willfully with corrupt motives conceal[] a building permit for a house/cabin of the plaintiffs from the court while submitting exhibits of theirs and known by defendant Judge Douglas A. Clapp at the time to be concealed for purposes of obtaining an order to deprive the plaintiff Marcellos right to live in their home." *Id.* ¶ 18.

The Complaint further alleges that on April 12, 1998, Attorney Russell "pers[u]aded his witness defendant Steward (sic) Brooks to testify falsely while under oath on cross-examination to the extent that Steward (sic) Brooks swore repeatedly while under oath denying that he issued a building permit for a house in 1996 to plaintiff James C. Marcello when he in fact did, and further denied seeing evidence of a cabin built when he in fact did, to which said false swearing

---

[5] Under *Nat'l R.R.. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), the Plaintiffs might be allowed at trial to present evidence of out of time events "as background evidence in support of a timely claim."  *See also Vesprini v. Shaw Contract Flooring Servs., Inc.*, 315 F.3d 37, 42 n.4 (1st Cir. 2002).  Although these claims are barred by the statute of limitations, *see infra*, the Court recites these allegations for background purposes only.

was material to the issue or question under consideration and known by defendant Judge Douglas A. Clapp at the time to be false." *Id.* ¶ 4.

### b.      The False Imprisonment Claim

The Complaint proceeds with several timely allegations.  It asserts that on October 23, 2001, Attorney Jon A. Haddow of FRR "conspired with defendant Judge Vendean Vafiades of Third District Court in Newport, Maine to obtain an illegal order authorizing a 'Nail and Mail' service of contempt subpoena on plaintiff James C. Marcello against the strictly construed Rule 66(d)(2)(C) '…in hand service…' at the 152 Cross Rd, Stetson, Maine address, knowing that plaintiffs were residing at 557 Maple Avenue, Barrington, Rhode Island address nursing their 82 year old father dieing (sic) of Alzheimer (sic) Dementia, for defendant Haddow[']s corrupt purpose of obtaining an illegal arrest warrant and hold without bail said plaintiff James Marcello for failure to appear in court within 6 days of service and extort plaintiff James Marcello or his disability moneys when brought directly to court." *Id.* ¶ 6.

It later alleges that on October 23, 2001, Attorney Haddow "pers[u]aded Glen (sic) Ross Chief Deputy of Penobscot County Sheriff Dept to manufacture a false affidavit to support an unauthorized order for an alternative service of contempt [subpoena] a 'Nail and Mail' against the strictly construed Rule 66(d)(2)(C) of the Maine Rules of Civil Procedure '…in hand Service…' to obtain a void default judgment and illegal warrant of arrest against plaintiff James Marcello and deprive [him] of his 'liberty' rights secured under the 14th Amendment without due process of law." *Id.* ¶ 13.

The complaint further claims that on September 30, 2005, James Marcello was falsely imprisoned "by said illegal warrant procured corruptly by defendant attorney Jon A. Haddow and was held without bail for 5 days and deprived of his 'Liberty' under the 14th Amendment [of

the] Constitution without due process of law as defendant Haddow acted under color of Town of Stetson Building Code Ordinance Section 3-E." *Id.* ¶ 7.

### c.   The Allegedly False Testimony of Travis Gould

The Complaint next claims that on March 22 and March 29, 2006, Attorney Haddow and Judge Anderson "conspired with defendant Travis Gould, who knowingly and willingly, broke the close of plaintiffs James & Olivia Marcello['s] property located at 152 Cross Rd, Stetson, Maine….and entered into the outer skirting of their mobile home violating the plaintiffs['] 4th Amendment rights…." *Id.* ¶ 9. It then asserts that on April 5, 2006, Attorney Haddow "pers[u]aded Travis Gould to swear falsely in affidavit to the extent that '…no foundation has been installed,' when in fact he observed on March 22nd and 29th, 2006 a permanent foundation had been installed in co[m]pliance with Section 3-E of [the] Stetson Building Code Ordinance."[6] *Id.* ¶ 10. As a consequence, Plaintiffs claim that Judge Anderson, Attorney Haddow, and Travis Gould "are compelling plaintiffs, through extortion methods, to surrender property to them by designing a mechanism of a 'pledge' attached to a purported Order dated and signed by Defendant Judge Anderson on May 19, 2006 purporting on [its] face [to be] a warrant of arrest to issue against plaintiff James Marcello for 30 day sentence."[7] *Id.* ¶ 22.

### IV.   Motion to Dismiss

### a.   Statute of Limitations – 1997 and 1998 Claims

As a preliminary issue, FRR contends that to the extent the Plaintiffs' causes of action are based on events in 1997 and 1998, they are time barred by the applicable statute of limitations.

---

[6] The next allegation is that Judge Anderson denied the Plaintiffs equal access to justice by arbitrarily denying Mr. Marcello's application to proceed without payment of fees. *Id.* ¶ 12. Although the Complaint alleges that Attorney Haddow fraudulently obtained the court order the Marcellos sought to appeal without payment of fees, there is no allegation that Attorney Haddow directly influenced Judge Anderson's decision to deny the *in forma pauperis* application.

[7] Here, Plaintiffs cite 18 U.S.C. § 1961(1)(A), the definitional section of the Racketeer Influenced and Corrupt Organizations (RICO) statute.

Because 42 U.S.C § 1983 does not have a "built-in statute of limitations," the court borrows the limitation period from state law. *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir. 1995). In Maine, the general limitations period for civil actions is six years. 14 M.R.S.A. § 752.

FRR rightly points out that Plaintiffs' discrete claims arising before May 31, 2000, six years before the date the Complaint was filed, are barred by the statute of limitations. *Def.'s Mot.* at 5. In their Complaint, Plaintiffs allege that in 1997, FRR conspired with Judge Clapp and Code Enforcement Officer Stewart Brooks to deprive Plaintiffs of their constitutional rights and that on April 12, 1998, during the Town's enforcement proceeding, an attorney for FRR persuaded a witness to testify falsely. *Compl.* ¶¶ 3, 4. Because each is barred by Maine's six year statute of limitations, this Court will not reach the merits of either claim. However, because Plaintiffs allege acts that fall within the statutory period, the statute of limitations defense does not fully resolve this matter.

### b.     Civil Conspiracy – May 31, 2000 Claims

### 1.     Color of State Law and Private Parties:  Legal Standards

FRR further argues that the Plaintiffs' claim of civil conspiracy as against FRR should fail because of a lack of state action and an absence of any overt act in furtherance of the alleged conspiracy. *See Def.'s Mot.* at 3-4. A Section 1983 action may not be brought against private actors and as a private law firm, FRR would not ordinarily be considered a state actor. *See Brown v. Newberger*, 291 F.3d 89, 93 (1st Cir. 2002); *Mills v. Brown*, 372 F. Supp. 2d 683, 689 (D.R.I. 2005). The threshold prerequisite under 42 U.S.C. § 1983 is an allegation of "interference with a constitutionally-protected right by someone acting under color of state law. . . ." *Malachowski v. City of Keene*, 787 F.2d 704, 710 (1st Cir. 1986); *see also Snyder v. Talbot*, 836 F. Supp. 19, 23 (D. Me. 1993). The First Circuit has established a familiar test to determine if

one has acted under color of state law to the extent that he can be considered a state actor:  "(1) whether there was an elaborate financial or regulatory nexus between [defendant] and the government . . . which compelled [defendant] to act as [it] did, 2) an assumption by [defendant] of traditionally public function, or (3) a symbiotic relationship involving the sharing of profits." *Brown*, 291 F.3d at 93 (quoting *Ponce v. Basketball Fed'n of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985)).

To make this analysis, the law provides that a private party's "participation in litigation, without more, does not constitute state action." *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980) (dismissing Section 1983 claims against attorneys who participated in a civil contempt proceeding).  Likewise, a party who merely elicits an action by a state official, but does not join in the exercise of authority, does not act under color of state law.  *Serbalik v. Gray*, 27 F. Supp. 2d 127, 131 (N.D.N.Y. 1998); *see also Mills v. Brown*, 372 F. Supp. 2d 683 (D.R.I. 2005) (dismissing a § 1983 law suit by a physician against witnesses who testified against her before the state board of licensure).

### 2.        Civil Conspiracy

It is possible that a private individual who is a "willful participant in joint activity with the State or its agents" can be held liable under § 1983.  *Snyder*, 836 F. Supp. at 23.  The First Circuit has ruled:

> A civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

*Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988)  (internal quotation marks omitted).  To illustrate, in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970), the Supreme Court found a

private individual to be acting under color of state law under Section 1983 for "reaching an understanding" with a state officer and for conspiring with a police officer to deprive the plaintiff of her civil rights, and in *Dennis v. Sparks*, 449 U.S. 24 (1980), the Supreme Court concluded that plaintiffs stated a cause of action against certain private parties under § 1983 when they alleged that the defendants had corruptly conspired with a judge to deprive them of property without due process of law.  It is "obvious, nonetheless, that something more than mere resort to a state court is required to transform the moving party into a co-conspirator or a joint actor with the judge." *Casa Marie, Inc. v. Superior Court of Puerto Rico*, 988 F.2d 252, 259 (1st Cir. 1992) (citation omitted).

As is the case with all Rule 12(b)(6) motions, although "required to accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff," the court "need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim . . . nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion." *Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 244 n.3 (1st Cir. 2005).  Where the Plaintiff alleges a conspiracy, the Complaint must allege "with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir. 1977) (quoting *Powell v. Workmen's Compensation Board*, 327 F.2d 131, 137 (2d Cir. 1964)); *see also Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980) (noting that although "pro se complaints are to be read generously . . . allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements.") (internal citation omitted).

## V.     Discussion

### a.     Allegations:  2001 - 2005

The essence of the 2001 – 2005 set of allegations is that FRR improperly conspired with a series of judges to allow service of a contempt citation against James Marcello in contravention of the Maine Rules of Civil Procedure and as a consequence, he was arrested and jailed without hearing.  Maine Rule of Civil Procedure 66 "classifies the procedure for contempt hearings into three distinct types:  (1) summary proceedings for contempt occurring in the presence of the judge in which punitive and remedial sanctions may be imposed summarily, M.R. Civ. P. 66(b); (2) plenary proceedings for contempt occurring either in the presence of the court or outside the presence of the court when punitive sanctions are sought, M.R. Civ. P. 66(c); and (3) plenary proceedings for contempt occurring in the presence of the court or outside the presence of the court when remedial sanctions are sought, M.R. Civ. P. 66(d)."  *Desjardins v. Desjardins*, 2005 ME 77, ¶ 6, 876 A.2d 26, 28.  Here, the state court was proceeding under Rule 66(d).  *See Def.'s Mot.* Ex. C at 2 (citing M.R. Civ. P. 66(d)(2)(E)).

The Plaintiffs point to the mandatory language of Rule 66(d):  "a plenary remedial proceeding under this subdivision <u>must</u> be used when remedial sanctions are sought for contempt occurring outside the presence of the court…."  M.R. Civ. P. 66(d)(1) (emphasis added).  They note that Rule 66(d)(2)(C) provides that "[s]ervice upon an individual shall be made in hand by an officer qualified to serve civil process."  Because the Order allowed for what the Plaintiffs term "nail and mail"[8] service, instead of service in hand, they claim the service of process was

---

[8] The Order, as amended, provided that the Plaintiff may serve the contempt subpoena upon the Defendant by posting a copy of it on the front gate of the Defendant's residence and by sending a copy by regular mail on or before October 27, 2001.  *Def.'s Mot.* Ex. C.  "Nail and mail" apparently refers to service of process whereby a notice of a legal paper is attached to a building and a copy is mailed to the last known address of the owner.  *See* Ruben Klein, *Letter to the Editor*, N.Y. Times, September 7, 1986.

fatally flawed and it follows, according to the Plaintiffs, that all proceedings based on this erroneous foundation are similarly suspect.

The Plaintiffs, however, read Rule 66 too closely and overstate its mandate.  In *Splude v. Dugan*, 2003 ME 88, 828 A.2d 772, the Maine Supreme Judicial Court addressed a similar argument and commented that the theory underlying the service requirement is that "the Constitution requires notice and an opportunity to be heard before the imposition of contempt sanctions."  *Id.* ¶ 6, 828 A.2d at 775.  The "specific type of process due, including notice, varies from case to case 'to promote the fairness of each particular action.'"  *Id.* (quoting *Estate of Wilson*, 2000 ME 49, ¶ 20, 747 A.2d 582, 587).  *Dugan* suggests that the court has the authority to provide for alternative service in a contempt case, where the individual, for example, deliberately avoids service.  *Id.* ¶ 7, 828 A.2d at 775.

Here, the exhibits to FRR's motion and the state court record plainly establish that before alternative service was ordered, Mr. Marcello had received whatever process was due under *Dugan* and that alternative service was fully justified under the circumstances because of the reasonable belief that he was deliberately avoiding service.  This Court concludes that Plaintiffs' claim that they were denied due process by the "nail and mail" service of the contempt subpoena has no merit.

### b.     Allegation:  2006

As against Attorney Haddow, the gravamen of the 2006 contention is that he persuaded municipal Code Enforcement Officer Travis Gould to trespass on the Plaintiffs' property and later to testify falsely about what he saw during a contempt hearing and this has resulted in the imposition of a 30-day sentence against James Marcello and a court ordered confiscation of their property.  The Complaint alleges that a contempt hearing was held on March 1, 2006 and May

18, 2006 in Maine District Court in Waterville, in which Mr. Gould testified before Judge Anderson. *Compl.* ¶ 21. It also alleges that Judge Anderson issued an Order dated May 19, 2006, which required Mr. Marcello's arrest and the confiscation of his property.[9] *Id.* ¶ 22.

Keeping in mind that the law does not deem a lawyer's resort to court on behalf of a client, without more, to constitute state action, the Complaint fails to satisfy any of the *Ponce* criteria on either the 2001-05 or 2006 allegations. There is no factual allegation that would allow this Court to conclude there is a nexus between the actions of FRR and the resulting orders of the state judiciary such as would allow the actions of the law firm to be deemed state action. *See Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 19-20 (1st Cir. 1999); *Rodriguez-Garcia v. Davila*, 904 F.2d 90, 96-98 (1st Cir. 1990). There is no allegation that would allow this Court to conclude that the state delegated its judicial functions to this private law firm. *See Perkins*, 196 F.3d at 18-19; *Rodriguez-Garcia*, 904 F.2d at 97. Finally, there is no allegation that would allow this Court to conclude that the relationship between the law firm and the state judiciary was symbiotic within the law's meaning. *See Perkins*, 196 F.3d at 20-21; *Rodriguez-Garcia*, 904 F.2d at 98-99. Therefore, the Court concludes that FRR is not a state actor for purposes of 42 U.S.C. § 1983.

Absent a finding of state action, this Court can hold FRR liable for a violation of Section 1983 only as part of a civil conspiracy. This theory also falls short. The Complaint alleges that the conspiracy began in 1997 when FRR, then Code Enforcement Officer Brooks, and then Judge Clapp "reached an understanding to commit crimes against the 14th Amendment rights of the plaintiffs." *Compl.* ¶ 3. They assert that Judge Vendean Vafiades joined the conspiracy in 2001, when she authorized the issuance of the "nail and mail" service. *Id.* at 6. Finally, they claim that Judge William Anderson "conspired" with Code Enforcement Officer Gould when

---

[9] The parties have not provided a copy of Judge Anderson's May 19, 2006 Order.

Mr. Gould allegedly "broke the close of plaintiffs" and continued the conspiracy when he issued a contempt order against them. *Id.* ¶¶ 9, 12.

The underlying problem is that the law suit is premised on an allegation that, over the course of the last eight to nine years, virtually the entire judicial branch of the state of Maine colluded with the law firm of FRR and municipal officers of the town of Stetson to deprive the Plaintiffs of their liberty and property.  Based on the travel of this case, at least two code enforcement officers, four district court judges, two superior court justices, and the full panoply of justices of the Maine Supreme Judicial Court would have had to be involved with at least two lawyers from a private law firm and with a number of municipal officials in effecting a massive and sustained conspiracy.  The sheer length and scope of the alleged conspiracy, the absence of any claimed motive on the part of the judges, the lawyers, or the municipal officials, the conclusory allegations in the Plaintiffs' pleadings, all point to allegations driven not by underlying facts, but by results.

The Plaintiffs have adduced no underlying facts that would support such a serious and overweening charge.  Further, the actions of the state judges contradict the law suit's premise, since they repeatedly provided hearing after hearing to the Plaintiffs.  There is no doubt that the Plaintiffs feel strongly that the town of Stetson, its employees and law firm, and members of the state judiciary acted unfairly in enforcing the town ordinance against them.  However, it is an entirely different matter to allow an inchoate sense of injustice to form the basis of a Section 1983 civil rights conspiracy claim.  This is precisely the reason the law requires more than conclusory allegations to withstand dismissal even at this early stage in the proceedings.  In these circumstances, the Court concludes that the Plaintiffs failed to state a claim of civil rights

conspiracy that is cognizable under 42 U.S.C. § 1983, absent specific allegations of overt acts that would support their claims.

## VI.     Conclusion

Because Plaintiffs have failed to state a claim against FRR upon which relief may be granted, this Court GRANTS the Defendant's Motion to Dismiss (Docket # 11) and DENIES Plaintiffs' Motion to Strike (Docket # 18).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE


Dated this 24th day of October, 2006