UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAMES C. MARCELLO, and<br>OLIVIA MARCELLO<br><br>        Plaintiffs,<br><br>   v.<br><br>STATE OF MAINE, et al.<br><br>        Defendants. | )<br>)<br>)<br>)<br>)   CV-06-68-B-W<br>)<br>)<br>)<br>)<br>) |

## ORDER ON DEFENDANT TRAVIS GOULD'S
## MOTION FOR SUMMARY JUDGMENT

James and Olivia Marcello most earnestly do not wish to build the foundation under their trailer that the town of Stetson contends its building code requires. In 1997, the Town began an action against the Marcellos to force compliance with the ordinance. After losing at each critical stage in a multiplicity of protracted state proceedings, the Marcellos filed a civil rights action under 42 U.S.C. § 1983 against various parties, including the state of Maine, the law firm of Farrell, Rosenblatt & Russell, the Maine District Court, and Travis Gould, code enforcement officer for the town of Stetson. One by one, the Court granted dispositive motions until Travis Gould stood as the sole remaining defendant. Because Mr. Gould is absolutely immune from liability based on his testimony as a municipal officer and because he is entitled to qualified immunity for his entry onto their property, the Court grants his motion to dismiss and/or motion for summary judgment.

I.  THE COMPLAINT ALLEGATIONS

The Marcellos's allegations as against Travis Gould revolve around two essential themes: (1) Mr. Gould's testimony at the state court contempt hearing; and, (2) Mr. Gould's inspection of the Marcellos's trailer to verify compliance – or noncompliance – with the Town's building code.  The Court resolves the former on the Defendant's motion to dismiss.  As the latter involves the application of the doctrine of qualified immunity to issues of fact, the Court resolves it on his motion for summary judgment.

With regard to the first set of allegations, the Marcellos assert that on November 23, 2005, Mr. Gould and others "conspired with Judge William Anderson of the Waterville Court to preside without authority and to induce plaintiff James Marcello to take the stand against his objection to the jurisdiction of the court by ways of t[h]reats violating his 5th Amendment Constitutional rights."  *Compl*. ¶ 8.  They further allege that on April 5, 2006, attorney Jon Haddow – counsel for the town of Stetson – persuaded Mr. Gould "to swear falsely in [an] affidavit to the extent that '…no foundation has been installed.' when in fact he observed on March 22nd and 29th, 2006 a perm[a]n[e]nt foundation had been installed in co[m]pliance with Section 3-E of Stetson Building Code Ordinance."  *Id*. ¶ 10.  Finally, Plaintiffs allege that "Defendant State of Maine committed constitutional violations at common law while defendants Judge William Anderson, attorney Jon A. Haddow, Esq, and Travis Gould, CEO, while in Waterville District Court held purported contempt proceedings against plaintiff James Marcello . . . after special entry of appearance by said plaintiff objecting to the jurisdiction."  *Id*. ¶ 21.

With regard to the Fourth Amendment allegations, the Marcellos allege that, on March 22, 2006 and March 29, 2006, Mr. Gould "knowingly and willingly [] broke the close of

2

plaintiffs James & Olivia Marcello property . . . with no trespassing signs posted and against the owners['] consent, entered the property and broke and entered into the outer skirting of their mobile home violating the plaintiffs['] 4th Amendment rights secured under the Constitutional laws of the land." *Compl*. ¶ 9.  They further allege that Mr. Gould committed this same violation on March 15, 2006.  *Id*. ¶ 20.

## II. MOTION TO DISMISS.

### A. Standard

Rule 12(b)(6) provides, in part:

> Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . . .

FED. R. CIV. P. 12(b)(6).  "In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998)). A defendant is entitled to dismissal only if it "'appears to a certainty that the plaintiff would be unable to recover under any set of facts.'" *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001) (quoting *Roma Constr. Co. v. A Russo*, 96 F.3d 566, 569 (1st Cir. 1996)); *see also Nethersole v. Bulger*, 287 F.3d 15, 18 (1st Cir. 2002).

### B. Defendant's Motion to Dismiss

Mr. Gould's first claim is that he is "absolutely immune from civil liability for [the] testimony he provided in the state court proceeding." *Def.'s Mot*. at 10. The Supreme Court's decision in *Briscoe v. Lahue*, 460 U.S. 325 (1983) controls.  The issue in *Briscoe* was whether

"government officials who testify about the performance of their official duties may be held liable under § 1983 even if other witnesses may not." 460 U.S. at 326. The three petitioners – each of whom had been convicted of crimes – sued police officers under § 1983, alleging that the officers had committed perjury during their trials, resulting in violations of their due process rights. In all three cases, the Seventh Circuit upheld dismissals in favor of the defendant police officers, holding that "all witnesses – police officers as well as lay witnesses – are absolutely immune from civil liability based on their testimony in judicial proceedings." *Id*. at 328.

Addressing a circuit split, the Supreme Court compared the issue to other § 1983 immunity issues, noting first that "state judges are absolutely immune from liability for their judicial acts," citing *Pierson v. Ray*, 386 U.S. 547 (1967) and *Stump v. Sparkman*, 435 U.S. 349 (1978), and that "state prosecutors have absolute immunity from liability for their actions in initiating prosecutions." *Id*. at 335. Furthermore, the Court discussed the answer to the question under common law:

> In short, the common law provided absolute immunity from subsequent damages liability for all persons – governmental or otherwise – who were integral parts of the judicial process. It is equally clear that § 1983 does not authorize a damages claim against private witnesses on the one hand, or against judges or prosecutors in the performance of their respective duties on the other.

*Id*. at 336. Also, after reviewing the legislative history of § 1983, the Court concluded that there was "no evidence that Congress intended to abrogate the traditional common law witness immunity in § 1983 actions." *Id.* at 337. The Court noted that "[s]ubjecting government officials . . . to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties." *Id.* at 343.

4

Of particular relevance here, *Briscoe* noted that law suits alleging perjury by a public official "could be expected with some frequency." *Id.* at 343. By its nature, an allegation of perjury, violative of a person's constitutional rights, would "often raise material questions of fact, inappropriate for disposition at the summary judgment stage." *Id.* at 343 n.29. Absent absolute immunity, summary judgment would often not be "feasible under these circumstances" and the result would be that the case would "proceed to trial and must traverse much of the same ground as the original . . . trial." *Id.* The Court expressed concern that "[t]his category of § 1983 litigation might well impose significant burdens on the judicial system and on law enforcement resources." *Id*. *Briscoe* held that that the three police officers were absolutely immune from § 1983 liability with respect to their testimony at trial. *Id*. at 345-46.

*Briscoe's* holding has been extended beyond police officers to public officials. *Briscoe* clarifies that the twin rationales for absolute testimonial immunity are alternatively that "he can make a strong claim to witness immunity" or that, because he is "regarded as an official performing a critical role in the judicial process, . . . he may seek the benefit afforded to other governmental participants in the same proceeding." *Briscoe*, 460 U.S. at 336. These same rationales apply with equal force to public officials. *Briscoe* also is careful not to limit its reach to police officers alone: "Subjecting *government officials, such as police officers*, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process, but also the effective performance of their public duties."[1] *Id.* at 342-43 (emphasis supplied). Thus, in *Frazier v. Bailey*, for example, the First Circuit, addressing claims against social workers, noted that it is "well established that public officers possess absolute

---

[1] There is no evidence Mr. Gould was acting as a private individual while testifying, but, if so, he would be entitled to witness immunity. *Briscoe*, 460 U.S. at 325, 334; *Frazier v. Bailey*, 957 F.2d 920, 931 n.12 (1st Cir. 1992).

5

immunity for activities that are intimately associated with the judicial process." 957 F.2d 920, 931 n.12 (1st Cir. 1992).

On several occasions, the First Circuit has applied *Briscoe's* absolute immunity doctrine to factual scenarios similar to the case at bar, and has dealt swiftly with § 1983 claims based on witness perjury. *See, e.g.*, *Young v. Knox County Deputy*, No. 95-1064, 1995 U.S. App. LEXIS 29229, at *2 (1st Cir. Oct. 17, 1995) ("Insofar as plaintiff seeks to recover for [the deputy sheriff's] alleged perjury, his claim is barred by [*Briscoe*].");[2] *Cassell v. Osborn*, No. 93-1557, No. 93-1607, No. 93-2079, 1994 U.S. App. LEXIS 8991, at *16 (1st Cir. Apr. 26, 1994) ("The claims against the prosecuting witness also fail for lack of any showing that she acted under 'color of state law,' and because her trial testimony is entitled to absolute immunity."); *Bleicken v. Perkins*, No. 93-1531, 1993 U.S. App. LEXIS 33878, at *5 n.1 (1st Cir. Dec. 29, 1993); *Pigott v. Lynn Police Dep't*, No. 93-1115, 1993 U.S. App. LEXIS 24692, at *18 (1st Cir. Sept. 27, 1993) ("Insofar as [the plaintiff] alleged that the nine Lynn police officers and other defendants who testified at his criminal trial committed perjury, [the plaintiff] concedes, as he must, that [*Briscoe*] entitles these defendants to absolute immunity from damages liability under 42 U.S.C. § 1983.").[3]

The Marcellos further allege that Mr. Gould entered into a conspiracy with Attorney Haddow and Judge Anderson to induce Mr. Marcello to unwillingly testify at the contempt hearing on November 23, 2005. *See Compl.* ¶ 8. Claims of conspiracy must, however, "be pled with particularity." *Ahanotu v. Mass. Tpk. Auth.*, 466 F. Supp. 2d 378, 389 (D. Mass. 2006).

---

[2] In *Young*, the plaintiff filed suit under § 1983 for "violations of the Fifth and Fourteenth Amendments' due process requirement and the Fourth Amendment right to be free from 'unreasonable seizures.'" *Id*. at *1. The district court dismissed the complaint as frivolous under 28 U.S.C. § 1915(d), and the First Circuit affirmed. *Id.* at *4-5.

[3] In *Pigott*, however, the First Circuit noted that the plaintiff also alleged that these officers engaged in a general police conspiracy to "railroad" him and violate his civil rights, and therefore addressed this claim separately. *Id*. at *18-19. This Court will do the same.

Such claims "cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts." *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977); *Pigott*, No. 93-1115, 1993 U.S. App. LEXIS 24692, at *21 (1st Cir. Sept. 27, 1993); *Ahanotu*, 466 F. Supp. 2d at 389 (dismissing an allegation of civil conspiracy under § 1983).

Here, the Marcellos's Complaint contains the conclusory statement that Mr. Gould conspired with Attorney Haddow and Judge Anderson "to preside without authority and to induce [Mr. Marcello] to take the stand against his objection to the jurisdiction of the court by ways of [threats] violating his 5th Amendment Constitutional rights." *Compl.* ¶ 8. The Marcellos, however, failed either to allege or subsequently adduce any specific facts that would support a conspiracy cause of action against Mr. Gould. Mr. Gould did not preside over the trial; Judge Anderson did. As Code Enforcement Officer, Mr. Gould had no authority to require Mr. Marcello to testify against his will. As the proceedings in this case evidence, Mr. Marcello is an adult manifestly and acutely cognizant of his legal rights and fully capable of making his own decisions about whether he will assume the witness stand and whether he will offer testimony. Mr. Marcello may rue his decision to testify, but his regret does not provide a cognizable basis for suing someone else.

The same is true of Mr. Marcello's complaint against Judge Anderson's decision to proceed with the contempt proceeding over Mr. Marcello's attempt to enter a limited appearance to object to the court's jurisdiction. Again, Judge Anderson presided over the contempt proceeding and Mr. Gould had no authority to rule on Mr. Marcello's jurisdictional defense. As the Court has previously ruled, Judge Anderson is absolutely immune from any suit based on his

judicial decision-making and Mr. Gould cannot be held legally responsible for Judge Anderson's orders.

In sum, as in *Pigott*, the Plaintiffs' complaint "is manifestly founded upon the delusion that anyone who has had any connection with the events described . . . is a wrongdoer and in most cases a conspirator." *Pigott*, No. 93-1115, 1993 U.S. App. LEXIS 24692, at *21-22 (1st Cir. Sept. 27, 1993). The Court concludes that, to the extent the Marcellos seek to recover for Mr. Gould's alleged perjury, *Briscoe* bars the claim. With respect to the conspiracy charges, the claim is too conclusory to adequately state a claim for relief under § 1983 and, in any event, his underlying acts, as alleged, do not state a valid cause of action.

### III.    MOTION FOR SUMMARY JUDGMENT

The Court turns to the Marcellos's allegations of Fourth Amendment violations, relating to Mr. Gould's inspection of their trailer to ascertain whether they were compliant with the building code.

#### A.    Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to . . . judgment as a matter of law." FED. R. CIV. P. 56(c).; *Buchanan v. Maine*, 469 F.3d 158, 166 (1st Cir. 2006). Summary judgment may enter when a plaintiff fails to show sufficient evidence to establish an essential element of his case on which he bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Once the movant avers 'an absence of evidence to support the nonmoving party's case,' the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" *Sheinkopf v. Stone*, 927 F.2d 1259, 1261

(1st Cir. 1991) (citations omitted). A fact is "material" if it has the "'potential to affect the outcome of the suit under the applicable law.'" *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)). For an issue to be "genuine," the evidence relevant to the issue, viewed in the light most flattering to the nonmoving party, must be "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "[C]onclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Rather, "[t]he evidence illustrating the factual controversy . . . must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve . . . ." *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st. Cir. 1989) (citing *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975)).

### B. Plaintiffs' Failure to Respond

Here, the Marcellos's opposition to Defendant's motion lacks a response to Defendant's statement of material facts, as required by Local Rule 56(c).[4] The Marcellos's sole mention of

---

[4] The Local Rules require:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in [] separately numbered paragraphs and supported by a record citation as required by subsection (f) of this rule.

Local Rule 56(c).

the statement of material facts is that "plaintiffs object to the statement of material facts 'main document' evidence of defendant Gould . . . offered as being inadmissible on the grounds that it is total scand[a]lous material, i[m]pertinent, and designed for delay." *Pls.' Opp'n* at 2.

In an earlier pleading, which the Court dismissed as moot, the Marcellos asked for what they called "fair notice." *Mot. to Court for Fair Notice Summ. J. Rule* (Docket # 60); *Order* (Docket # 76). Responding to a motion to dismiss, the Marcellos's motion read in part:

> To the extent that the court may treat the said motion of Defendant "State" as one for summary judgment under Rule 56, plaintiffs respectfully request that the court "Before entering summary judgment against pro se plaintiff, district court, as bare minimum, should provide plaintiff with fair notice of summary judgment rule to effect that failure to respond to defendant's motion for summary judgment might well result in entry of summary judgment against him. See Roseboro v. Garrison, (1975, CA 4 NC), 528 Fes 309, 21 FR Serv. 2d 822.

*Id.* at 1.[5] The "majority of circuits have held that a *pro se* plaintiff is entitled to notice of the consequences of a summary judgment motion and the requirements of the summary judgment rule."[6] *United States v. Ninety-Three Firearms*, 330 F.3d 414, 427 (6th Cir. 2003); *see also Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988); *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); *United States v. One Colt Python .357 Revolver*, 845 F.2d 287, 289 (11th Cir. 1988) (noting the Eleventh Circuit's strict ten-day advance notice requirement); *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982); *Barker v. Norman*, 651 F.2d 1107, 1128-29 (5th Cir. 1981); *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975); *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968).

---

[5] The Court found the motion moot because it did not treat the state defendants' motion to dismiss as a motion for summary judgment. *See Order on Defs.' Mot. to Dismiss* at 1 n.1 (Docket # 76).

[6] Some circuits extend this leniency to all *pro se* litigants, while others, such as the Sixth Circuit, limit it to prisoner *pro se* litigants. *Ninety-Three Firearms*, 330 F.3d at 427 n.2; *compare Jackson v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985) (extending the provision to nonprisoner *pro se* litigants); *with Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) and *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982) (limiting the rule to prisoners).

The First Circuit has not ruled directly on this notice issue, but has ruled that *pro se* litigants are not exempt from the Federal Rules or Local Rules. See *Rivera v. Riley*, 209 F.3d 24, 27-28 & n.2 (1st Cir. 2000) ("We have held consistently that *pro se* status does not free a litigant in a civil case of the obligation to comply with procedural rules."); *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988) ("[E]ven a *pro se* litigant must meet the specificity requirement of Federal Rule 56, at least when the litigant becomes aware that specific facts must be provided to defeat a motion for summary judgment."); *Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24, 27 (1st Cir. 1980) ("Although [the plaintiff], as a *pro se* litigant, may not have been aware of Rule 56(e) when he filed his first opposition, the defendants' reply memorandum put him on clear notice of the rule and the deficiencies of his initial response. When specific facts were not forthcoming in the second opposition, and no attempt to provide them or conduct discovery was made, *see* FED. R. CIV. P. 56(f), the district court was well warranted in granting summary judgment for [the defendant].").

In any event, the Court recognizes that, for some matters, *pro se* litigants receive the benefit of the doubt. For example, when construing a complaint for the purposes of a motion to dismiss, "the allegations of a [*pro se*] complaint . . . are held to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 10 n.7 (1980); *see also Instituto De Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). While a liberal reading may be appropriate in the summary judgment context, it is also true that "[j]udges and magistrate judges who review these filings must be able to rely on procedural rules so as to avoid becoming the lawyer for the unrepresented plaintiff or devoting an excessive portion of their time to such cases." *Clarke v. Blais*, Civil No. 05-177-P-H, 2007

U.S. Dist. LEXIS 10173, at *13 (D. Me. Feb. 17, 2007). The First Circuit aptly summarized the purpose of these rules:

> Such local rules are useful devices for focusing a district court's attention on what is – and what is not – genuinely controverted. Such rules are desirable in other ways as well. For one thing, they have the capacity to dispel the smokescreen behind which litigants with marginal or unwinnable cases often seek to hide. For another thing, they greatly reduce the possibility that the district court will fall victim to an ambush.

*Calvi v. Knox County*, 470 F.3d 422, 427 (1st Cir. 2006).

Of course, the irony here is that the Marcellos as *pro se* plaintiffs are clearly aware that the failure to respond to a defendant's motion for summary judgment can result in entry of summary judgment against the nonmovant. They not only earlier filed a motion to demand notice if the then pending motion to dismiss became a motion for summary judgment, but they even cited other circuit authority requiring special notice. The purpose of the special notice requirement would be to alert the unknowing *pro se* party that substantive consequences may result from the failure to abide by procedural rules. But, to require notice to a party who already knows would be an exercise in redundancy.

Furthermore, given the history of this case, it is not unreasonable to require the Marcellos to comply with the Local Rules. The Marcellos are certainly familiar with the Federal Rules of Civil Procedure, have responded to motions filed by the various defendants, and have filed no fewer than twenty-six motions themselves. The Marcellos have demonstrated their familiarity with the Local Rules because they have cited them. *See Reply Mem. of Law in Supp. of New Am. Compl. and Expert Witness Disclosure* (Docket # 85).

In addition, if they were not on notice of the requirements of the Local Rules before filing their opposition to Mr. Gould's motion for summary judgment, they surely were after Mr. Gould

filed his reply. *See Def.'s Reply Mem. in Supp. of Mot. for Summ. J.* at 1 ("At the outset, Plaintiffs have not attempted to file an appropriate response under Local Rules 7 and 56 . . . ."). Despite being placed on notice of their deficiency, the Marcellos did not attempt to cure the problem (i.e., by filing a supplemental pleading or moving for sur-reply). The First Circuit has enforced Rule 56(e)'s requirement "that an unrepresented plaintiff's opposition 'set forth specific facts showing that there is a genuine issue' – at least once he is put 'on clear notice of the rule and the deficiencies of his initial response.'" *Clarke*, Civil No. 05-177-P-H, 2007 U.S. Dist. LEXIS 10173, at *11 (D. Me. Feb. 17, 2007) (quoting *Mas Marques*, 637 F.2d at 27). The Court concludes that the Marcellos were on notice of the requirements contained in Local Rule 56(c), and their failure to comply with them must have consequences. Under Local Rule 56(f), "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." *See also* FED. R. CIV. P. 56(e) ("If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."). Here, because the Marcellos failed to controvert any of the Defendant's material facts, they are deemed admitted.

Moreover, as the Court is thoroughly familiar with this matter, having previously issued over twenty separate Orders, the Court readily concludes that "any affidavits or responsive papers that [the Marcellos] would have filed would not have raised genuine issues of material fact and would not have altered the decision to grant summary judgment." *Ninety-Three Firearms*, 330 F.3d at 428.

      **C.**    **Defendant's Local Rule 56 Statement of Material Facts**

Mr. Marcello obtained a permit to place a trailer on his Stetson property in 1996. *Statement of Material Facts* ¶ 11 (Docket # 97) (*SMF*). At that time, the town of Stetson

building code required that a trailer used for residential purposes have a foundation, but Mr. Marcello's trailer, which was a residence, had no foundation. *Id*. ¶¶ 13-14. Therefore, in 1997, the town of Stetson embarked on its efforts to enforce the building code against Mr. Marcello. *Id*. ¶ 15. On April 2, 1998, Maine District Court found that Mr. Marcello was in violation of the Town's building code, and ordered him to either discontinue use of the trailer as a residence or install a foundation by July 1, 1998. *Id*. ¶¶ 16-17. When Mr. Marcello failed to comply with either option, the Town initiated civil contempt proceedings against him in 2000. *Id*. ¶ 19. He failed to appear at the contempt hearing on November 6, 2001, so the district court issued a bench warrant for his arrest. *Id*. ¶ 20. The warrant sat idle until October 4, 2005, when Mr. Marcello was arrested and brought before the district court; at that time, he agreed to pay the $391 fine owed and to install a proper foundation under his dwelling by November 7, 2005, or cease using the trailer as a dwelling. *Id*. ¶¶ 21-22. Upon violation of these conditions, the district court held further contempt proceedings on November 23, 2005, at which time the court found, by clear and convincing evidence, that Mr. Marcello had intentionally violated the court's 1998 Order by continuing to use the noncompliant trailer. *Id*. ¶ 23. The court further found Mr. Marcello in contempt and sentenced him to thirty days in jail; however, the court allowed him to purge himself of contempt if he pledged not to use the structure without first installing a foundation. *Id*. ¶ 27. To verify compliance, the court required Mr. Marcello to provide access to the Town's code enforcement officer to inspect the property upon request. *Id*. ¶ 28.[7] This is where Mr. Gould enters the scene.

---

[7] The order states: "The defendant is ordered to permit the Stetson code enforcement officer, accompanied by a law enforcement officer, to inspect his property for the purpose of ascertaining whether a foundation has been installed and whether defendant is using the mobile home as a dwelling. This access shall be permitted upon the code enforcement officer's request." *Def.'s Mot*. Ex. A.

Travis Gould has been the code enforcement officer (CEO) for the town of Stetson since October 2005. *Id.* ¶ 1. After assuming the position, he quickly became familiar with the long-standing dispute between the Marcellos and the Town over their non-compliance with the Town's building code. *Id.* ¶¶ 2, 13. Following the district court's November 23, 2005 Order, Mr. Gould asked Mr. Marcello for access to the property to inspect it. *Id.* ¶ 31. Despite the clear language of the order, Mr. Marcello was unaccommodating, and denied Mr. Gould's request for access. *Id.* ¶ 33. In accordance with the Maine District Court's Order of November 23, 2005, the Town filed an affidavit advising the court that Mr. Marcello defied the court-ordered access provision. *Id.* ¶ 33. The district court held yet another hearing on March 7, 2006, and issued still another order instructing Mr. Marcello to allow access. *Id.* ¶ 34. Accordingly, Mr. Gould twice inspected the Marcello property around and under the trailer in March 2006, and found that the trailer was supported by a number of timbers resting on cement blocks. *Id.* ¶ 50. On the second visit, March 29, 2006, he photographed the area under the trailer. *Id.* ¶¶ 5, 6. On each occasion, a law enforcement officer accompanied Mr. Gould to the Marcello residence, as authorized by the original court order. *Id.* ¶ 48. Mr. Gould concluded that the trailer was inhabited, but still lacking the type of foundation required by the Stetson building code. *Id.* ¶ 36.

The Maine District Court held a hearing on May 19, 2006, at which Mr. Gould testified about his inspections, and the court again found, by clear and convincing evidence, that Mr. Marcello had still failed to purge the contempt. *Id.* ¶ 39. After issuing another arrest warrant, the district court provided Mr. Marcello with one last chance: he could avoid jail by signing a written pledge in open court, promising to install a foundation or vacate the premises. *Id.* ¶ 40. To this day, the Marcellos's trailer remains on the property and still does not comply with the building code. *Id.* ¶ 52.

### D. Discussion

In response to the Marcellos's ultimate claim that Travis Gould violated their Fourth Amendment rights, Mr. Gould responds that his search of the Marcello property was constitutional and, furthermore, he is entitled to qualified immunity. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Galarza*, No. 05-1430, 2007 U.S. App. LEXIS 4660, at *62 (1st Cir. Mar. 1, 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The First Circuit's three-step approach to qualified immunity claims asks:

> (1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right.

*Wilson v. City of Boston*, 421 F.3d 45, 52 (1st Cir. 2005) (quoting *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 141 (1st Cir. 2001)).

Under the first prong, the court must ask "whether the facts, taken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a constitutional right." *Galarza*, No. 05-1430, 2007 U.S. App. LEXIS 4660, at *62 (1st Cir. Mar. 1, 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Here, the Marcellos allege a violation of their rights under the Fourth Amendment, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon

> probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.  To determine whether an official action violates the Fourth Amendment, the "ultimate question" is the existence of probable cause.  *See Wilson*, 421 F.3d at 55.

Here, despite the Marcellos's persistent assertion that Mr. Gould violated their Fourth Amendment rights, the facts – even in the light most favorable to the Marcellos – do not support their claim.  First, not only was there *probable cause* to believe that the Marcellos were not compliant with the building code, but the district court had twice found, by the more exacting standard of *clear and convincing evidence*, that the Marcellos were in contempt.  Second, Mr. Gould entered the Marcello property, pursuant to two separate court orders, for the sole purpose of determining whether they had either installed a foundation under their mobile home or vacated the premises, as required by the court's orders.  A law enforcement officer accompanied Mr. Gould on both visits, and Mr. Gould merely photographed underneath the trailer as proof that a foundation did not exist.  The Marcellos do not dispute Mr. Gould's version of the events, but do allege in the Complaint that Ms. Marcello refused to consent to Mr. Gould's entry.  Even when viewing these facts in the light most favorable to the Marcellos, however, the Court concludes that Mr. Gould did not violate any constitutional right.

The second step of the qualified immunity analysis "deals with fair warning; it asks whether the law was clearly established at the time of the constitutional violation."  *Galarza*, No. 05-1430, 2007 U.S. App. LEXIS 4660, at *81 (1st Cir. Mar. 1, 2007) (quoting *Savard v. Rhode Island*, 338 F.3d 23, 27 (1st Cir. 2003)).  That is, to subject the officer to suit, he must have been on notice that his conduct was unlawful.  *Id*.  This prong favors a finding of qualified immunity

because the situation here is the opposite: Mr. Gould had actual notice from the Maine District Court – by way of two separate court orders – that his conduct was, in fact, entirely *lawful*.

Even had the Court answered the first two questions in the affirmative, the answer to the final question firmly establishes that Mr. Gould is entitled to qualified immunity. Here, the Court concludes that an objectively reasonable official would not have believed that Mr. Gould's actions – the execution of a court order by visiting the Marcello property to ascertain whether they had installed a foundation under their trailer – would comprise a Fourth Amendment violation. To find otherwise would disrupt the routine enforcement of municipal laws and regulations, unduly constrain the application of the doctrine of qualified immunity, and foster the filing of attenuated civil rights claims under 42 U.S.C. § 1983 by citizens disgruntled by the application of any state regulatory authority.

The Court concludes that Mr. Gould's actions did not constitute a Fourth Amendment violation because it was not an unreasonable search of the Marcellos's property, and, in any event, Mr. Gould is entitled to qualified immunity for his actions underlying Plaintiffs' claim.

## IV.   CONCLUSION

To the extent the Marcellos assert violations based on Mr. Gould's testimony relating to the contempt proceedings, they have failed to state a claim upon which relief may be granted, because he is absolutely immune from a § 1983 action based on his testimony. With respect to the alleged Fourth Amendment violation based on Mr. Gould's inspection of the premises, as he inspected the Marcellos's premises as a code enforcement officer for the Town under express court authority, there are no cognizable constitutional violations and Mr. Gould is protected from suit by the doctrine of qualified immunity. Hence, there are no genuine issues of material fact

and Mr. Gould is entitled to summary judgment in his favor.  The Court GRANTS Travis Gould's Motion to Dismiss and/or for Summary Judgment.

      SO ORDERED.

                                                  /s/ John A. Woodcock, Jr.
                                                  JOHN A. WOODCOCK, JR.
                                                  UNITED STATES DISTRICT JUDGE

Dated this 6th day of April, 2007